OPINION
On April 10, 1998, the Franklin County Grand Jury indicted defendant-appellant, John Butler, on one count of aggravated murder with a specification and one count of aggravated robbery. On February 9, 1999, a jury convicted appellant of both counts. Appellant was sentenced to serve terms of imprisonment of thirty years to life and ten to twenty-five years to run consecutively.
On June 22, 2000, this court reversed the conviction finding that the trial court erred in not suppressing a telephone conversation between appellant and his wife during an improper custodial interrogation. See State v. Butler (June 22, 2000), Franklin App. No. 99AP-302, unreported.
The trial court conducted a new trial and appellant was again convicted of both counts and sentenced to serve terms of imprisonment of thirty years to life and ten to twenty-five years to run consecutively. Appellant filed a notice of appeal and raises the following assignments of error:
 I. The prosecuting attorney's remarks during opening statements, trial, and closing arguments constituted prosecutorial misconduct which deprived Appellant of a fair trial in violation of the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution.
 II. The trial court erred and thereby deprived Appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution by overruling Appellant's Crim.R. 29 motion for judgment of acquittal, as the prosecution failed to offer sufficient evidence to prove beyond a reasonable doubt each and every element of aggravated murder and aggravated robbery.
 III. The trial court erred and thereby deprived Appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution by finding Appellant guilty, as the verdict for the charges of aggravated murder and aggravated robbery were against the manifest weight of the evidence.
 IV. The trial court erred in its instructions to the jury, thereby depriving Appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution.
Appellant's convictions arose out of events occurring during New Year's weekend, December 29, 1995 to January 1, 1996. Cheryl Davis, a twenty-six year old who lived alone, was found dead in her apartment by her parents on January 1, 1996.
Cheryl, appellant, and several other witnesses had attended the same high school in Licking County. In 1993, Cheryl shared her apartment with Michelle Wolfe, also a high school classmate. Wolfe testified that appellant lived in the same apartment complex and visited Cheryl approximately three or four times per week, despite appellant having a girlfriend. He would arrive uninvited and unannounced. Sometimes Cheryl and Michelle would refuse to answer the door and pretend not to be home.
In the summer of 1994, Cheryl started dating Matt Stuller, who had also attended the same high school. Stuller and appellant were friends. Cheryl and Stuller lived together for several months, became engaged and Stuller gave Cheryl a distinctive heart-shaped diamond ring with five prongs, for which he paid $1,500. Stuller testified that, in November 1995, the relationship ended because of money, his lack of responsibility, his failure to pay his portion of the bills and disagreements over disciplining his son. He asked for the ring back but Cheryl refused to return it until he repaid her $300 she had paid for new clothes for Stuller to wear to Cheryl's brother's wedding. Cheryl continued to wear the ring but it was missing from her finger when her body was found. There was an injury to the back side of the ring finger on Cheryl's left hand, as if an object was scraped across her finger, so as to cause the skin to be lost on that finger. Appellant sold the ring to a co-worker for $200 and had earlier tried to sell the ring to Jim Cornwell.
Cheryl's co-worker, Tonya Underwood, testified that she had invited Cheryl to her parents house in Lodi, Ohio, for a New Year's Eve party but Cheryl had not decided whether she would attend the party or go shopping with her mother. Cheryl's mother testified that, on Friday, December 29, 1995, she spoke to Cheryl on the phone at approximately 5:30 p.m., concerning shopping the next day but no plans were resolved. Underwood stated that she spoke to Cheryl on the telephone at approximately 7:45 on Friday evening, December 29, 1995, and then left Cheryl several messages on Saturday. Cheryl's mother testified that, after being unable to reach Cheryl on Saturday, Sunday or Monday, she and Cheryl's father went to Cheryl's apartment on Monday, January 1, 1996. The door was unlocked and undamaged. Several witnesses testified that Cheryl was very safety conscious and it would be uncommon for her to leave the door unlocked and for her to open the door dressed as she was in long underwear and a long coat for someone other than a person she knew well. Other evidence will be discussed in conjunction with specific assignments of error.
We shall address appellant's second assignment of error first. By the second assignment of error, appellant contends that the trial court erred and thereby deprived him of his due process rights by overruling his Crim.R. 29 motion for judgment of acquittal, as the prosecution failed to offer sufficient evidence to prove beyond a reasonable doubt each and every element of aggravated murder and aggravated robbery. The standard of review for sufficiency of the evidence is if, while viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." State v. Thompkins (1997),78 Ohio St.3d 380, 386.
Appellant argues that the jury was required to impermissibly stack one inference upon another inference. In State v. Martin (1999),134 Ohio App.3d 41, 44, the court stated that stacking an inference upon an inference is legally impermissible. Appellant argues that, based on the fact that appellant sold Cheryl's engagement ring, the jury was required to infer that appellant was present at Cheryl's apartment at the time of her death and, from that, infer that he robbed and murdered Cheryl. However, as stated in State v. Ebright (1983), 11 Ohio App.3d 97,99, an inference which is based in part upon an inference and in part upon facts is a parallel inference and permissible, if reasonable. Appellee argues that no inference in this case is based entirely upon another inference.
Appellee argues that the evidence is sufficient for a rational trier of fact to have found the essential elements of the crimes proven beyond a reasonable doubt. Although the evidence is almost entirely circumstantial, circumstantial evidence possesses the same probative value as direct evidence and should be subjected to the same standard of proof. Jenks, at paragraph one of the syllabus.
Cheryl's father testified that, dressed as she was when her body was found, in long underwear and a long coat, it is unlikely that she would have let anyone inside the apartment unless she knew them well. Cheryl's mother testified that she was unsure whether or not Cheryl would have let appellant into the apartment given the way she was dressed.
One of appellant's co-workers, Lovell Romans, testified that he heard appellant say that appellant had dropped Cheryl off at her apartment on Friday, December 29, 1995, and was the last one to see her alive. However, Cheryl left work at 5:00 p.m., and talked to her mother on the telephone at approximately 5:30 p.m. Cheryl also talked to her co-worker, Tonya Underwood, on the telephone at approximately 7:45 p.m.
Appellee also presented evidence that appellant and Cheryl experienced a relationship full of conflict. A few years before the murder, appellant lived with a girlfriend yet visited Cheryl three or four times per week. Appellant would often joke and "pick on" Cheryl concerning her appearance. Sometimes, Cheryl and her roommate would pretend not to be home when appellant visited. While Stuller testified that appellant and Cheryl "got along," he also testified that once Stuller, Cheryl and appellant were at an "expo" and Cheryl made appellant so mad that he stormed off by himself and Stuller and Cheryl left him there.
Appellant told Michelle Wolfe that he was mad at Cheryl for the way Cheryl treated Stuller's son. Appellant's co-worker, Jim Cornwell, testified that appellant said he hated Cheryl because of the way she treated Stuller. Cornwell also testified that appellant had asked him if he ever hated someone enough to want them dead. Cornwell's fiancée, Nissa Ebert, testified that appellant said he hated Cheryl because she was mean to Stuller.
Another classmate, John Mitchell, testified that appellant called him in early January 1996, and asked him questions regarding the investigation such as how long fingerprints last and how long murder investigations last.
The prosecution also presented evidence that appellant told several people different stories concerning his whereabouts on December 29, 1995. Mitchell testified that appellant initially told him he had gone to UDF for milk on December 29, 1995. Over the course of a week, appellant then told him two more stories, that he had been to Meijer to return a videotape and had been in a fight at the gym and received scratches. Mitchell also testified that the news media, however, was not discussing the date of December 29, 1995, since the body had been discovered on January 1, 1996. Police Detective Jester testified that he did not recall the date of December 29, 1995, being released to the media as the alleged date of death.
Appellant told Michelle Wolfe that Stuller could not have committed the murder because he was with appellant in Washington that weekend. Nissa Ebert testified that appellant told her that Stuller and appellant both had alibis because Stuller was in New York City that weekend and appellant was at his family's house. Finally, the prosecution presented evidence that appellant sold Cheryl's engagement ring for a fraction of its value.
Given this evidence, which we must construe in a light most favorable to the prosecution, it is reasonable to infer that appellant committed the murder and injured Cheryl's ring finger when the ring was removed, as he possessed and, later, sold the ring. While we recognize that other reasonable inferences might be drawn from this same evidence, such as someone could have removed the ring after Cheryl was killed by another, we must review the evidence in a light most favorable to the prosecution. Thus, an inference was not impermissibly stacked upon another inference and we find the evidence is sufficient for a trier of fact to have found the essential elements of the crimes proven beyond a reasonable doubt. Appellant's second assignment of error is not well-taken.
By the first assignment of error, appellant contends that the prosecuting attorney's remarks during opening statements, trial and closing arguments, constituted prosecutorial misconduct. The test for prosecutorial misconduct is whether the conduct complained of deprived the defendant of a fair trial. State v. Apanovitch (1987), 33 Ohio St.3d 19,24.
There are many comments which appellant contends were improper and inflammatory, and deprived him of his constitutional right to a fair trial. The first occurred during opening statements, when the prosecutor stated:
 [MR. MITCHELL:] But the weirdest thing about this whole thing is that after this happens Butler can't stop talking. Of course, he didn't have the character to admit what he did.
MR. SHAMANSKY: Object, your Honor. Object.
 THE COURT: Sustained. Jury shall disregard. Confine it to the evidence.
MR. MITCHELL: You'll learn enough about his character.
 MR. SHAMANSKY: Object, Your Honor. His character is not an issue in this case.
 THE COURT: Objection sustained. Opening statement should be confined to what the evidence will show.
 MR. MITCHELL: All right. You'll learn that his nature is of a murderous, self-centered, brutal, friendless thug, and here's how you're going to learn it. Johnny Butler cannot keep his mouth shut. He also cannot tell the same story twice. Completely incapable of that. [Tr. at 51-52.]
The second instance which appellant contends constituted misconduct occurred when the prosecutor stated, as follows:
 MR. MITCHELL: Please note my continuing objection to this improper, inflammatory, prejudicial, line of questioning. [Tr. at 233.]
The last instance occurred during closing arguments when the prosecutor stated, as follows:
 Basically, if I had to sum up this case in just a few words, I can tell you that the defendant cannot explain the unexplainable. He cannot account for it. He cannot dismiss it. He can't even address it. [Tr. at 509.]
Again, during his closing argument, the prosecutor stated, as follows:
 The defendant cannot account for having this ring. This defendant cannot account for selling this ring. This defendant cannot account for interfering with these witnesses. This defendant cannot account for his multiple versions of where he was that night. He cannot account for the fact that he repeatedly said that he hated an innocent person who had never meant him any harm. * * * [Tr. at 524-525.]
In State v. Keenan (1993), 66 Ohio St.3d 402, 406, the Supreme Court of Ohio set forth the standard for evaluating a claim of prosecutorial misconduct, as follows:
 * * * The prosecutor carries into court the prestige of "the representative * * * of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest * * * is not that it shall win a case, but that justice shall be done. * * * Consequently, improper suggestions, insinuations and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none." Berger v. United States (1935), 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, 1321.
In State v. Zimmerman (1985), 18 Ohio St.3d 43, 45, the court stated that, even if the prosecution makes an improper comment on a defendant's failure to testify, the "conviction must be affirmed if it is concluded, based on the whole record, that the prosecutor's improper comments were harmless beyond any reasonable doubt." To determine whether the comment was harmless, a court must determine whether "[a]bsent the prosecutor's allusion to the failure of the accused to testify, is it clear, beyond any reasonable doubt, that the jury would have returned a verdict of guilty?" Id. To do so, the remaining evidence standing alone must constitute "overwhelming" proof of the defendant's guilt.
Harrington v. California (1969), 395 U.S. 250, 254.
In the first instance, the trial court sustained the objection and instructed the jury to disregard the comment; likewise, the jury was instructed that opening statements are not evidence. The jury is presumed to follow instructions given by the court. Pang v. Minch (1990), 53 Ohio St.3d 186, paragraph four of the syllabus. We do not find that this instance prejudiced appellant's rights.
In the second instance, defense counsel moved for a mistrial which was overruled. While the remark was improper, it did not prejudicially affect appellant's substantial rights.
The third instance occurred during the prosecutor's closing argument. Prosecutors are given considerable latitude during closing arguments. State v. Mauer (1984), 15 Ohio St.3d 239, 269, certiorari denied (1985),472 U.S. 1012. However, it is improper for a prosecutor to comment on a defendant's failure to testify. State v. Fears (1999), 86 Ohio St.3d 329,336. Such a comment may violate the defendant's Fifth Amendment rights if "`the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'" Fears, citing State v. Webb (1994), 70 Ohio St.3d 325, 328, quoting Knowles v. United States (C.A.10, 1955), 224 F.2d 168, 170. This case is similar to State v. Clark (1991), 74 Ohio App.3d 151, 156, in which the prosecutor in his closing argument stated: "George [the decedent] can't talk, Clark [the defendant] won't." The court found the comment on the defendant's failure to testify improper and constituted reversible error as to the aggravated murder counts because the other circumstantial evidence was not overwhelming. Similarly, as evidence is not overwhelming as to appellant's guilt, we find that this comment did prejudice appellant and constitutes reversible error. Appellant's first assignment of error is well-taken in part.
By the third assignment of error, appellant contends that the trial court erred and thereby deprived appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution by finding appellant guilty, as the verdict for the charges of aggravated murder and aggravated robbery were against the manifest weight of the evidence. This assignment of error has been rendered moot by our ruling on the first assignment of error.
By the fourth assignment of error, appellant contends that the trial court erred in its instructions to the jury, thereby depriving appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution. Appellant argues that the trial court erred in giving two instructions: (1) "The mere presence of the defendant at the scene of the crime does not establish that he committed the crime. Rather, you must find beyond a reasonable doubt that the defendant committed each of the elements of the crime with which he has been charged"; and (2) an aider and abettor instruction. (Tr. at 571-572.)
A trial court may only instruct the jury on issues raised by the indictment and evidence. State v. Denny (Oct. 12, 1989), Franklin App. No. 89AP-329, unreported, at 8. There was no evidence in this case that appellant was other than the principal and only actor in this case. The instructions were inconsistent with the evidence and misleading for the jurors. Appellant's fourth assignment of error is sustained.
For the foregoing reasons, appellant's first assignment of error is sustained in part and overruled in part, the second assignment of error is overruled and the third assignment of error is moot, and the fourth assignment of error is sustained. The judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment reversed and cause remanded.
DESHLER, J., concurs.
BROWN, J., concurring separately.